**HARRINGTON et al. v. HARRISON et al.**

Civil Action No. 1586.

District Court, N. D. Texas,
Dallas Division.

Oct. 10, 1945.

Touchstone, Wight, Gormley & Touchstone, of Dallas, Tex., and Will Hancock, of Waxahachie, Tex., for plaintiff.

Lee Gammon, Mark Smith, and Bruce Allen, all of Waxahachie, Tex., and Joe Worsham and M. B. Harrell, both of Dallas, Tex., for defendants.

ATWELL, District Judge.

On May 29, 1941, Harrison caused Mark Smith, his attorney, to draw a deed to a three hundred and twenty acre farm in Ellis County, Texas, to the defendants, nieces and nephews of his, Harrison's, wife. The deed was placed in an envelope and Smith typed on the outside of the envelope these words:

"To be kept by my friend and attorney, Mark Smith, until the present World War is over or to the time of my death should Mr. Smith outlive me. In case of his death it is to be called for by either J. B. Harrington or G. L. Roebuck."

There is nothing in the instructions that were on the envelope, to Harrington or Roebuck, of what to do with it. The signature on the envelope, under the typewritten direction of custody, is unquestionably that of the maker of the deed, J. W. Harrison, which deed purports to have been signed on the 29th day of May, 1941, and to have been acknowledged the next day before Mark Smith, who testifies that he was Harrison's only attorney. That prior to that time Harrison had Mr. Gross as his, Harrison's, attorney; and that he, Smith, knows of no other attorney that Harrison consulted.

The testimony discloses, however, that after this deed was executed, and purportedly delivered to Mark Smith, in accordance with the typewritten memorandum on the envelope, that Harrison made three or four wills, in one of which the grantees in this particular deed were remembered as beneficiaries, and that this identical property, listed as a portion of the estate, was disposed of in the will.

In addition to that, we have the testimony of Smith that Harrison came to him and asked him if he had the right to take this deed down, and if he did so, would it be legal; and that Smith advised him that he could do so. Later Smith says he ascertained that what he advised him was wrong. He does not testify that he let his client and confiding friend know of such erroneous advice.

It is in the record here, to which I will refer again as to the source of the testimony, that while Harrison was living he sent Herrington and Roebuck to get this deed, and bring it to him. They say they took it back to Smith. Smith says that they did not do that. They say that they sub-

sequently found, or rather, Mr. Herrington said that they subsequently found that deed in Harrison's trunk, among other papers. That he, Herrington, doesn't know how it got there.

So that, recognizing the rule as appropriately stated by both counsel for plaintiffs and defendants, there is the lingering doubt here, and I use the word "lingering" with thoughtfulness, the lingering doubt as to the purpose of Harrison at the time he left the deed with Smith. There was the advice of his attorney that he could take it down. There is the certainty that the two men whom he said could get it, in case of his death, did get it before his death.

Now, I go to a more delicate matter. Mr. Herrington's testimony, or demeanor, upon the stand, is marked by a rather unusual nervousness. That word, that phrase, "unusual nervousness," may be italicized when we critically remember Mr. Smith, as he testified, he was even more nervous. Those who are accustomed to court rooms, accustomed to passing upon the credibility of witnesses, often accept nervousness as a protest of the body against what the tongue says. Sometimes that is an erroneous conclusion.

If we take one side of it at a time, and that is what we should do, we find each, Herrington and Smith, deeply interested in the outcome of the lawsuit. So, they do not come here as disinterested parties. In addition to an interest in the lawsuit, Mr. Smith occupies a rather unenviable position, insofar as consistency of representation is concerned, because of his appearance upon one side, and then upon the other. Neither does the court have the benefit of the letter or letters which Mr. Smith wrote to these parties with whom he is engaged in the attempt to recover this property. Suffice it to say that the cable which they sent to him to file it, and while the court is not authorized to presume unreaably, he is not bereft of the power to logically follow through testimony, I have very grave doubt about the knowledge of residents of England as to the filing system in America. And, there is no instruction on this envelope to file any deed; nor, to deliver any deed. It says it is to be kept. That may be, and probably is a rather strained and close following of the word to not give it some fuller meaning. But, we must remember that this direction was placed on the envelope, not by Mr. Harrison, but by Mr. Harrison's friend and attorney whom Mr. Harrison trusted.

It also appears that at the time of the discovery by Mr. Smith, apparently, of his erroneous advice to his client and friend, Judge Allen, who is associated with Mr. Smith in the lawsuit, and who was his associate, had access to his, Smith's safe, and that he, Allen, had seen this deed in the safe two or three times, at least twice, and he thinks three times, or, rather the envelope in which it is said to have been. He also was consulted by Mr. Smith as to the advice which Mr. Smith had given Mr. Harrison with reference to Harrison's legality or illegality if he, Harrison, took the deed back. And, it was Judge Allen who advised Mr. Smith that he thought he, Smith, had advised Mr. Harrison wrongly. That was pretty close to the time that Judge Allen became County Judge in fact, where he had, and as Probate Judge, handeled this identical estate.

Sometimes happenings are unduly italicized, but that is the fact, and these gentlemen recognize it, and they are ethical, and they know the meaning of the fineness of the bar when it decries representation by an attorney upon both sides. As I understand the law, it is, I think, as is pointed out by counsel, that transfer of a deed from the grantor to the grantee, or some person acting in his behalf, in such a manner as to deprive the grantor of his right to recall it at his option, is a delivery. No particular form is required to effect delivery. It may be by acts, or by words, or by both. But, now comes the great clause—"but, in all cases there must be an intention that it shall be delivered." Delivered, not filed. Delivered, not kept. That is the law, as pronounced by the highest courts of the state of Texas, and by the highest courts of all the states.

The temptation to cite a long list of cases must be satisfied with a reference to 26 C.J.S., Deeds, §§ 40–54, pages 231 to 260. In the list are many cases from Texas, and the text satisfactorily reflects such difference in the holdings as is sufficient to allow the student to exercise his own judgment as to the present state of the law.

Learned counsel for the defendants suggests that it gives "purpose" to the direction which is contained on the envelope if "delivery" is understood to have been the intention of the grantor.

A rather rough illustration of the inaptness of the thought may be noticed in the very common occurrence of one who writes a letter. He places the written letter in an envelope. He directs the envelope and places a stamp on it. The address is remote from the sender. But he places the letter in his pocket. He does not place the letter in the mail. Proof of that sort would not satisfy the law as to the effect of writing and sending through the United States mail the letter.

. Again, this brings us close to the question of the interest of Mr. Smith, Mr. Allen and Mr. Harrington, in the suit. At some time—it may have been when the deed was left with Smith—it may have been shortly thereafter, or more remotely thereafter, but it was sufficiently near, and may have been at the time of leaving the envelope—that he, Harrison, asked Smith if he had a right to take that down and if it would be legal.

While we do not know what was in the first three wills that he wrote, in 1941, 1942 and 1943, the last one being in 1943, we do know what was in the last will, because that is in evidence, and it disposes of this identical farm which was covered by the enveloped deed. Likewise, with reference to credibility, we have the testimony of Mrs. Rogers, Mrs. Harrison's nurse. Mrs. Harrison, whose brothers and sisters are on one side of this lawsuit and who live in England, did not own this farm, nor any community interest in it. The farm was the separate property of Mr. Harrison, her husband; she died the day before he did. Mrs. Rogers nursed Mrs. Harrison for about a year and up to the day of her death. She identified the two samples of handwriting which Mr. Smith says were sealed in the envelope with the deed and which Mr. Herrington said were not in that envelope. She says that she wrote one of those samples at Mr. Harrison's request, and that the other sample is not in his, Harrison's handwriting, so, that shows conclusively, if she told the truth, and I believe that she did, that those two handwritten pages were not in the envelope which contained the deed, as testified by Smith.

Another thing to be borne in mind in this connection is that the approximate amount representing the value of the farm which was in the deed, which was found in Harrison's trunk by the executor of his estate shortly after his death, and not in the possession of Smith, is represented in the amount of cash which he willed to these nieces and nephews of his wife. Thus we have many indicia of the intention of Harrison not to "deliver."

And, so, gentlemen, I am back where I was. I, as the judge of the facts, and as judge of the law, which I find to be outlined in this rather rough expression that I have indulged in, with the intermingled facts, I think the plaintiffs are entitled to recover. I do not believe that there was an intention to make a delivery of this deed.